IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**JAMEY PAUL BURRAGE**                                                        **PLAINTIFF**

**v.**          **No. 1:20CV222-NBB-RP**

**LEE COUNTY ADULT JAIL MEDICAL DEPARTMENT**        **DEFENDANT**

Consolidated With

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**JAMEY PAUL BURRAGE**          **PLAINTIFF**

**v.**          **No. 1:21CV103-NBB-RP**

**LEE COUNTY ADULT JAIL, ET AL.**          **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Jamie Paul Burrage, who challenges the conditions of his confinement at the Lee County Adult Detention Center under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendants failed to protect him from attack by other inmates, who held him in contempt because of the nature of his charges.[1] In addition,

---

[1] Allegations regarding Burrage's claims of failure to protect may be found in his complaint in *Burrage v. Lee County Adult Jail, et al.*, 1:21CV103-NBB-RP ("Failure to Protect Case.")

he alleges that the defendants did not provide adequate medical treatment for numbness in his right side.[2] The defendants have moved for summary judgment; the plaintiff has responded, and the matter is ripe for resolution.[3] For the reasons set forth below, the motion by the defendants for summary judgment will be granted, and judgment will be entered for the defendants in all respects.

## Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998).

---

[2] Allegations regarding Burrage's claims of denial of medical care may be found in his complaint in *Burrage v. Lee County Adult Jail Medical Department*, 1:20CV222-NBB-RP ("Denial of Medical Care Case.")

[3] The defendants filed identical motions for summary judgment in each cause of this consolidated case, both the Denial of Medical Care Case and the Failure to Protect Case.

Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings. Rather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id*. The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some

metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356, "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994). It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."

## Undisputed Material Facts

Mr. Burrage filed two actions under 42 U.S.C. § 1983; one alleging failure to protect him from other inmates; the other, denial of adequate medical care. The court summarizes the facts regarding these claims below.

**Failure to Protect**

In the failure to protect complaint, Burrage alleges that he "was robbed and jumped" more than once between August 2020 and March 2021. Exh. A[4], Failure to Protect Complaint, p. 9. The record indicates that Burrage was involved in several altercations that were broken up by Lee County jailors, who often placed Burrage in a separate cell, both to allow the combative inmates to regain their composure – and for their safety. On September 6, 2020, at approximately 12:06 p.m., Officer John Noe and Sergeant Brianna Silvia saw Burrage fighting with another inmate. Exhibit C, Jail records, Lee County – Burrage 00001-2. They broke up the fight, and both inmates were handcuffed, placed in separate jail cells and punished with thirty days of lockdown and loss of commissary privileges.

---

[4] The exhibits referenced in this memorandum opinion may be found attached to the Defendants' Motion for Summary Judgment.

On November 1, 2020, Sergeant Kayla Young was doing paperwork when she looked up and saw Burrage trying to communicate with her through the intercom system. Burrage told her, "Y'all have to get me out of this zone. They took all my stuff." Exhibit C, Jail records, Lee County – Burrage 00003-4. Sergeant Young then directed Corporal Terry Robbins to place Burrage in protective custody ("PC"), as he claimed he was not safe in any zone. *Id.* On December 26, 2020, Senior Officer Devon Whitaker saw Burrage and another inmate walk into F-Pod in an aggressive manner; then both started "swinging" at each other. Several deputies broke up the fight, placed each inmate in handcuffs – then placed each in a restraint chair until they both calmed down. Both inmates were placed on lockdown for fighting. Exhibit C, Jail records, Lee County – Burrage 00007-8.

Finally, on February 2, 2021, Burrage called Sergeant Brianna Silvia told her that he was scared and wanted to be placed in protective custody because other inmates were "messing with him about his charge." Sergeant Silvia placed him in F03 on protective custody. Exhibit C, Jail records, Lee County – Burrage 00010-11.

**Denial of Adequate Medical Care**

The record shows that medical staff examined and treated Mr. Burrage many times for a variety of medical complaints. On July 1, 2020, he was treated by the medical staff for complaints of an earache and sinus problems:[5]

07/01/2020 – 08:50

No known drug allergies. Complains of earache and sinus problems.

Exam: Left with parietal cerumen, tympanic membrane with mild erythema. Right tympanic membrane not viewable secondary to cerumen impaction.

Diagnosis: Cerumen impaction; Otitis media.

---

[5] The defendants and the court have interpreted some of the medical shorthand found in the medical records for ease of reading. There is no dispute as to the meaning of the shorthand.

> Plan: Flonase 50mcg/spray, 2 sprays each nostril daily. Amoxicillin 500g 1 tablet by mouth three times daily #30. Irrigate right ear after Debrox.

Exh. D, Medical Records, Lee County-Burrage 00021.

> On August 5, 2020, the medical staff saw Burrage for complaints of right arm and leg

numbness:

> 08/05/2020 – 09:15
>
> No known drug allergies. Complains of intermittent right arm and leg numbness. Toothache. Denies injury or trauma.
>
> Exam: Well-appearing; no acute distress. Regular rate, rhythm. Bilateral breath sounds clear. Neuro intact without deficits. No spine tenderness. Dental caries.
>
> Diagnosis: Intermittent paresthesias; dental caries.

*Id*.

> On August 19, 2020, Burrage was treated for ear pain:
>
> 08/19/2020 – 10:45
>
> No known drug allergies. Complains of ear pain.
>
> Exam: Bilateral cerumen impaction.
>
> Plan: Debrox and irrigate.
>
> Exh. D, Medical Records, Lee County-Burrage 00020. On September 17, 2020, Burrage was referred to LifeCore for evaluation and recommendation.

Exh. D, Medical Records, Lee County-Burrage 00020.

> On November 12, 2020, Burrage was treated by the medical staff for athlete's foot:
>
> 11/12/2020 – 13:00
>
> No known drug allergies. Complains of athlete's foot.
>
> Exam: Tinea pedis.
>
> Plan: Lotrisone cream apply twice daily #15g.

*Id*.

On December 16, 2020, Burrage was seen for intermittent numbness and tingling in his right side:

> 12/16/2020 – 13:30
>
> Complains of diffuse intermittent numbness/tingling to right side of body since August.
>
> Exam: Well-appearing; no acute distress. Neuro intact without deficits. Gait normal.

Exh. D, Medical Records, Lee County-Burrage 00019.

On January 28, 2021, Burrage was treated by Jamie Burrell, NP, for an earache and toothache:

> 01/28/2021 – 09:25
>
> No known drug allergies. Earache, toothache.
>
> Exam: Tympanic membranes erythemic and effusion. Scant cerumen. Dental caries. No Abscess.
>
> Plan: Amoxicillin 500g 1 tablet by mouth three times daily #30. Loratadine 10g 1 tablet by mouth daily #10; Prednisone
>
> 60/50/40/30/20/10.

*Id*.

On April 20, 2021, Burrage was again treated by Jamie Burrell, NP, for earache and sinus pressure:

> 04/20/2021 – 09:35
>
> No known drug allergies. Complains of earache and sinus pressure.
>
> Exam: Small bilateral cerumen impactions; pharynx normal; Tenderness to palpation maxillary sinuses.
>
> Plan: Augmentin 875g 1 tablet by mouth two times daily #20. Prednisone 60/50/40/30/20/10. Loratadine 10g by mouth daily.
>
> Debrox and irrigate both ears.

*Id*.

On May 25, 2021, Burrage was treated for swelling in his right lower extremity:

> 05/25/2021 – 10:02
>
> No known drug allergies. Complains of right lower extremity edema. Extremity (right) with 2+ edema. No erythema or warmth.
>
> Plan: Ultrasound Venous Doppler.

Exh. D, Medical Records, Lee County-Burrage 00018.

On June 8, 2021 he was given Clindamycin 300g 1 tablet by mouth every 6 hours #28, and then on June 16, 2021 he was prescribed Decadron 8ng injection x1 related to pharyngitis. *Id*.

Finally, on July 16, 2021, medical staff gave Mr. Burrage a physical examination:

> 07/16/2021 – 09:00
>
> No known drug allergies. Temp 98.2; blood pressure 127/93, pulse 61, respirations 12, O2 100%. No complaints today for sick call. No complaints of numbness or tingling today until I asked about it. States it's intermittent in nature and brief. States that if he moves his head a certain way he experiences numbness and tingling diffusely to entire right side of body.
>
> Exam: Well appearing; no acute distress. Regular rate rhythm. Bilateral breath sounds clear. Pupils equal, round, reactive to light and accommodation. No cervical, dorsal, lumbar spine tenderness with full range of motion and paresthesia not reproducible with range of motion on exam today. Patellar tendon reflexes upper and lower extremities 2+ and equal.

Exh. D, Medical Records, Lee County-Burrage 00019.

**No Allegation of Injury**

The plaintiff has not alleged any injury arising out of the medical care he received at the Lee County Adult Detention Center, stating only, "I went to medical about my right side going num[b] and I was told I had nerves damages by the (NP) and was told the[re] was nothing they could do about it. When I get out to seek my own medical treatment." Exhibit B, Complaint, ECF 1, p. 5. Mr. Burrage was seen by the nursing staff at the jail for his chronic condition. Exhibit D, Medical records. Likewise, though he claims that he was "jumped on" during his stay at the Lee County Adult

Detention Center, he has not alleged that he suffered any physical injury as a result. Doc. 1 at 8 (Failure to protect case).

## Failure to Protect

The plaintiff claims that the defendants failed to protect him from attack by other inmates. The Fourteenth Amendment affords pretrial detainees protection against injury at the hands of other inmates. *Hare v. City of Corinth, Miss.*, , 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted). Deliberate indifference is the proper standard in the context of pretrial detainees who claim denial of medical care or the failure to protect. *Id*. A prisoner plaintiff cannot show that a prison official showed deliberate indifference unless he can show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety;" indeed, the official must have been aware of facts giving rise to an inference that a substantial risk of serious harm existed – and he must have drawn that inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

An inmate pursuing a claim for failure to protect may prove his claim by showing that the defendants knew of a specific threat to him but failed to take measures to protect from it. *Id.* at 843. However, even in the absence of specific threat, an inmate may prove a claim of failure to protect if he can show that he was placed in a prison environment "where terror reigns." *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981), overruled on other grounds by *International Woodworkers of America, AFL-CIO and its Local No. 5-376 v. Champion Intern. Corp.*, 790 F.2d 1174 (5th Cir. 1986). This situation arises in a jail or prison where officials permit violent offenders to hold sway over part or all of the facility – creating "a pervasive risk of harm and a failure to take reasonable steps to prevent the known risk." *Stokes v. Delcambre,* 710 F.2d 1120 (5th Cir. 1983) (sheriff housed college students arrested on a non-violent misdemeanor charge with a dozen inmates charged with violent felonies – leading to the students' severe beating and rape). Indeed, "it does not matter whether the risk comes

from a single source or multiple sources, any more than it matters whether a prisoner faces excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

A negligent act does not rise to the level of a § 1983 claim for deliberate indifference; nor does an official's failure to alleviate a significant risk that he should have perceived, but did not. *See Thompson v. Upshur County*, TX, 245 F.3d 447, 459 (5th Cir. 2001); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference is "an extremely high standard to meet." *Id.* See also, *Sanders v. Cabana*, 2007 WL 922287 (N.D. Miss. March 26, 2007) (official's failure to immediately process a red tag against inmate who subsequently attacked plaintiff insufficient to state a § 1983 claim). In addition, "[a] prison official's mere knowledge of vague threats against an inmate is not sufficient to make it clear to the official that such information presents a substantial risk of serious harm to the inmate." *Williams v. Management & Training Corp.*, 2017 WL 8793429, at *3 (S.D. Miss. November 2, 2017) (citing *Coleman v. Tanner*, 2010 WL 2009445, at *9 (E.D. La. April 27, 2010)). Further, "it would be an unreasonable interference with prison administration to rule that Defendants had a duty to house Plaintiff at a facility [or different Pod] of his choosing based on his generalized fears." *Williams*, supra, at *3 n.4, citing *Jones v. United States,* 534 F.2d 53, 54 (5th Cir. 1976) (prison officials have broad discretion, free from judicial interference, in determining prisoner assignments); *Kahey v. Jones*, 836 F.2d 948, 950 (5th Cir. 1988) (courts defer to prison administrators concerning day-to-day prison operations).

In the present case, Mr. Burrage has put forth only general allegations about vague threats – essentially that the nature of his charges (sexual battery) puts him at risk of attack by other inmates. In addition, jail reports show that whenever Mr. Burrage was involved in an altercation – or voiced concern about his safety – he was placed in a different pod or protective custody (at least long enough

for tempers to cool). Further, as noted above, Burrage has not claimed injury arising out of a failure to protect him. Under these facts, Mr. Burrage has not shown that the defendants were deliberately indifferent to his safety, as he has not shown that the "[any defendant knew] of and disregard[ed] an excessive risk to [his] health or safety" – or that the defendant was aware of facts giving rise to an inference that a substantial risk of serious harm existed – and drew that inference. *Farmer, supra* at 837. For this reason, the defendants' motion for summary judgment will be granted, and judgment will be entered for the defendants s to the plaintiff's claims of failure to protect him.

## Denial of Medical Treatment

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id*. Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). This same subjective deliberate indifference standard has been applied to pretrial detainees under the Fourteenth Amendment as well as convicted inmates under the Eighth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996).

A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his

serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). "Deliberate indifference is not established when medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015). Nor is it established by a physician not accommodating a prisoner's requests in a manner he desired or the prisoner's disagreement with the treatment. *Id.*; *Miller v. Wayback House*, 253 F. App'x 399, 401 (5th Cir. 2007). To meet his burden in establishing deliberate indifference on the part of medical staff, the plaintiff "must show that [medical staff] refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498.

The facts in this case do not support a claim for denial of adequate medical care. Mr. Burrage complains that, when he went for treatment of right side numbness, the Nurse Practitioner told him that he had suffered nerve damage, and "the[re] was nothing they could do about it" and "when [he] get[s] out[,] to seek [his] own medical treatment." Doc. 1 at 5. (Denial of Medical Care Case). The plaintiff noted that he had been unable to make bond – and was thus unable to seek outside medical treatment. *Id*.

He has not shown that the medical staff refused to treat him, ignored his complaints, intentionally provided the wrong treatment – or any other conduct indicating a wanton disregard for his serious medical needs. *See Brauner, supra*. Over the course of his stay at the Lee County Adult Detention Center, the plaintiff sought medical care some ten times: three times for right side numbness and seven times for other problems (mostly ear, nose, and throat issues). *See, generally* Exh. D, Medical Records, Lee County-Burrage 00018 - 00021. The feeling of numbness and tingling was, by Burrage's own account, intermittent, brief, and brought on when he moved his neck a certain

way. *Id*. at 00019. He displayed no acute distress, neurological deficits, or spine tenderness at any of the examinations. *Id*. at 00019, 00021. The nurse could not reproduce the problem during a range of motion examination, and his patellar tendon reflexes were normal on both sides. *Id*. at 00019. The problem was minor enough that he did not even mention it during his examination of July 16, 2021, until the Nurse Practitioner asked him about it. *Id*. at 00019. In addition, the plaintiff has not stated what treatment he believes would have alleviated his problem, and he has not shown that he suffered any harm from the acts or omissions of the medical staff during his stay at the jail. For these reasons, Mr. Burrage has not shown that the defendants were deliberately indifferent to his serious medical needs. The defendants' motion for summary judgment will thus be granted, and judgment will be entered for the defendants as to the plaintiff's claims regarding denial of adequate medical care.

## Conclusion

For the reasons set forth above, the motion[6] by the defendants for summary judgment will be granted, and judgment will be entered in favor of the defendants in all respects. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 18th day of July, 2022.

/s/ Neal Biggers
NEAL B. BIGGERS
SENIOR U. S. DISTRICT JUDGE

---

[6] Docket no. 72 in the Failure to Protect case, *Burrage v. Lee County Adult Jail, et al.*, 1:21CV103-NBB-RP; Docket no. 72 in the Denial of Medical Care Case, *Burrage v. Lee County Adult Jail Medical Department*, 1:20CV222-NBB-RP.